UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| NORAMCO LLC,<br><br>      Plaintiff,<br><br>  v.<br><br>DISHMAN USA, INC.,<br><br>      Defendant. | C.A. No.: 1:21-cv-01696-WCB |

**DEFENDANTS' ANSWER BRIEF IN OPPOSITION TO
PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS**

STAMOULIS & WEINBLATT LLC
Stamatios Stamoulis (#4606)
800 N. West Street, Third Floor
Wilmington, DE 19801
(302) 999-1540
stamoulis@swdelaw.com

*Attorney for Defendant Dishman USA, Inc.*

Dated: June 9, 2022
Wilmington, Delaware

i

## Table of Contents

I. SUMMARY OF THE ARGUMENT ................................................................................ 1

II. NATURE AND STAGE OF PROCEEDINGS .................................................................. 2

III. STATEMENT OF FACTS ............................................................................................ 3

IV. LEGAL STANDARDS ................................................................................................ 5

V. ARGUMENT .............................................................................................................. 7

    A. NORAMCO FAILED TO TIMELY NOTIFY DISHMAN OF ITS REJECTION ................................. 7

    B. NORAMCO FAILED TO ADHERE TO THE TESTING PROTOCOLS IN THE SUPPLY AGREEMENT 9

    C. DISHMAN'S ACKNOWLEDGEMENT THAT THE DOCUMENTS ATTACHED TO THE SAC SPEAK FOR THEMSELVES IS NOT AN ADMISSION AS TO ANY FACTS OR TO LIABILITY ......................... 10

    D. DISHMAN'S AFFIRMATIVE DEFENSES ARE PROPERLY PLED ............................................. 13

VI. CONCLUSION ........................................................................................................ 14

# TABLE OF AUTHORITIES

## Cases

*Agrelo v. Meloni Law Firm*, No. 14-21192-CIV,
 2017 WL 10636451, (S.D. Fla. Sept. 22, 2017) ............................................................... 10

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ............................................................................................ 6

*Bayer CropSci. AG v. DowAgroScis. LLC*,
 2011 WL 6934557, (D. Del. Dec. 30, 2011) ...................................................................... 6

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ..................................................................... 6

*Butamax Advanced Biofuels LLC v. Gevo, Inc.*,
 No. 11-54-SLR, 2012 WL 2365905, (D. Del. June 21, 2012) .......................................... 5

*Charleston v. Salon Secrets Day Spa, Inc.*, No. CIV.A. 08-5889,
 2009 WL 1795529 (E.D. Pa. June 24, 2009) ................................................................... 12

*Fesnak & Assocs., LLP v. U.S. Bank Nat'l Ass'n*,
 722 F. Supp. 2d 496, 502 (D. Del. 2010) .......................................................................... 7

*Green v. Fund Asset Mgmt., L.P.*, 245 F.3d 213, 220 (3d Cir. 2001) ............................................. 6

*In re Cotter*, No. 08-12504 NLW, 2011 WL 5900811
 (Bankr. D.N.J. Oct. 24, 2011) .................................................................................... 12, 13

*In re World Health Jets LLC*, 610 B.R. 118 (Bankr. S.D. Miss 2019) ......................................... 10

*Intell. Ventures I LLC v. Symantec Corp.*, No. CV 13-440-LPS,
 2014 WL 4773954, (D. Del. Sept. 24, 2014) .................................................................... 6

*Jablonski v. Pan Am. World Airways, Inc.*,
 863 F.2d 289, 290-91 (3d Cir. 1988) ................................................................................. 5

*Jang v. Boston Scientific Scimed, Inc.*, Civ. No. 10-681-SLR,
 2011 WL 4527319, (D. Del. Sept. 30, 2011) .................................................................... 5

*Kleiman v. Wright*, No. 18-CV-80176,
 2020 WL 11420664, (S.D. Fla. Nov. 18, 2020) ......................................................... 10, 13

*Masimo Corp. v. Philips Elec. N. Am. Corp.*, No. CV 09-80-LPS,
 2015 WL 2406155, (D. Del. May 18, 2015) .................................................................... 6

*Pushko*, 2008 WL 10505502 .......................................................................................................... 13

*Revell v. Port Auth.*, 598 F.3d 128, 134 (3d Cir. 2010) .................................................................. 5

*Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir. 2008) ........................................................ 5

*Symbol Techs., Inc. v. Aruba Networks, Inc.*, 609 F. Supp. 2d 353 (D. Del. 2009) ........................ 7

*Venetec Int'l, Inc. v. Nexus Med., LLC*, 541 F. Supp. 2d 612 (D. Del. 2008) ............................ 5, 6

*Westgate Fin. Corp. v. Cotswold Indus., Inc.*, No. 1:09-CV-2627-WSD,
　　2009 WL 10211922, (N.D. Ga. Dec. 31, 2009) ............................................................... 10
*Wyeth Holdings Corp. v. Sandoz, Inc.*, 2012 WL 600715, at \*4 (D. Del. Feb. 3, 2012) ................ 6

**Rules**

FED. R. CIV .P.12(c) ................................................................................................................ 5
FED. R. CIV. P. 12(b)(6) .......................................................................................................... 6
FED. R. CIV. P. 12(f) ............................................................................................................... 6

Dishman USA, Inc. ("Dishman"), by its undersigned attorneys, submits this Answering Brief in Opposition to the Motion for Judgment on the Pleadings filed by Noramco LLC ("Plaintiff" or "Noramco"), a Delaware limited liability company (formerly Noramco, Inc.) pursuant to Federal Rule of Civil Procedure 12(c).

## I.  SUMMARY OF THE ARGUMENT

1. In its Answer (D.I. 37) to the Second Amended Complaint of Noramco, Dishman made clear that: "[p]ursuant to Fed. R. Civ. P. 8(b)(3), Dishman denies all allegations in Plaintiffs' Second Amended Complaint except those expressly admitted below." (D.I. 37 at 1).

2. In addition, each and every time Dishman responded to a block quote from or a reference to a document by stating the "document speaks for itself," Dishman also included a denial in its response that was directed to Noramco's allegations or conclusions contained within the allegation. (*See* D.I. 37 at ¶¶ 10,11, 17, 18-20, 26-28, 30, 33,34, 44-48, 55, 58, 60, 96-98, 100, 101). For example, in response to the allegation in Para 97: "On September 24, 2020, Dishman agreed to return the Olivetol and to organize its return to Dishman. Exhibit B," Dishman's response was: "ANSWER: Denied.  The document speaks for itself." (See D.I. 37 at ¶ 97).

3. Courts have uniformly held that, where a defendant admits to the contents of a document but disputes the meaning and impact of those contents, such a response does not constitute the blanket admission Noramco believes it does.

4. Dishman disputes that it breached its contract with Noramco and unequivocally denied Noramco's allegations on that issue. (*See* D.I. 37 at ¶¶ 29, 56-57, 61-64, 81-91, 103, 109). Dishman will contend at trial that – at the time it delivered the Olivetol to the port as

required by the Supply Agreement – all of the prerequisite compliance requirements of the Supply Agreement were satisfied. Any employees that made representations to Noramco to the contrary were not authorized to alter the terms of the Supply Agreement. Thus, regardless of the contents of their unauthorized statements, the parole evidence rule prohibits altering the Supply Agreement's terms based on those unapproved representations.

5.      Indeed, as will be shown at trial, it was Noramco that breached the Supply Agreement by failing to follow the Supply Agreement's procedures for testing and rejecting product in a timely fashion. Had Noramco followed the procedures set forth in the Supply Agreement (that it voluntarily entered into), a timely risk assessment analysis could have been performed on the Olivetol and the product could have been used in the ordinary course (as was done with numerous other customers of Dishman who chose to follow the procedures in their supply agreements). Noramco's Motion for Judgment on the Pleadings should be denied.

## II.   NATURE AND STAGE OF PROCEEDINGS

On December 1, 2021, Noramco filed its Complaint alleging breach of contract (D.I. 1). On January 14, 2022, Dishman filed its Motion to Dismiss the Complaint (D.I. 6). On January 28, 2022, Noramco filed its Amended Complaint (D.I. 12). On February 18, 2022, Dishman filed its Answer to the Amended Complaint (D.I. 14). On March 10, 2022, the Court entered an Order denying the Motion to Dismiss as moot (D.I. 17). On March 11, 2022, Noramco filed its Motion to Strike Dishman's Answer in Part and Certain Affirmative Defenses (D.I. 18). On March 14, 2022, the Court entered a Stipulation and Order that Noramco will withdraw its motion to strike without prejudice to refile at a later date (D.I. 21). On April 14, 2022, Noramco

filed its Second Amended Complaint (D.I. 35) (the "SAC"). On April 28, 2022, Dishman filed its Answer to the Second Amended Complaint (D.I. 37) (the "Answer").

### III.  STATEMENT OF FACTS

Dishman supplied certain product (the "Material", "Product" or "Olivetol") to Noramco pursuant to a Supply Agreement dated July 1, 2019 (the "Supply Agreement" or "Agreement"). After the Olivetol had been manufactured by Dishman, the plant that produced the Product was subject to a routine inspection by a third-party named Swissmedic, which works with various European regulatory agencies to ensure compliance with applicable manufacturing standards. The Swissmedic report noted a deficiency in an area of the plant that was not involved in the production of Olivetol.

In its Second Amended Complaint ("SAC"), Noramco alleges that the Olivetol supplied by Dishman did not meet certain manufacturing and regulatory standards required by the Supply Agreement.  Dishman disputes Noramco's allegations and believes the Olivetol it supplied to Noramco complied with all manufacturing and regulatory standards at the time it was delivered to the port for acceptance by Noramco, and that Noramco failed to perform certain conditions precedent required by the Supply Agreement in order to be entitled to any remedy for an alleged breach that arose after the material was already in Noramco's possession.

In the event Noramco believed the material supplied by Dishman to Noramco was non-conforming, the Supply Agreement sets forth a procedure for how the parties were supposed to address such disputes, which is a notice and cure procedure.  *See* Second Amended Complaint Ex. 1 at Sec. 12.3 ("any disputes with respect to non-conforming material … shall be resolved in accordance with Section 4.3 above").

The Supply Agreement provides that Noramco has thirty (30) business days after receiving the Product to inspect and reject it, and if it discovers a latent Defect after that thirty (30) business-day period, it has fifteen (15) business days after its discovery or after the defect should have been discovered to notify Dishman in writing that the Product is non-conforming. *See* SAC Ex. 1 at Sec. 4.3.1.  The disputed Olivetol was received by Noramco on April 14, 2020.  On April 17, 2020, Dishman notified Noramco of the results of its manufacturing plant audit by Swissmedic, three days before Swissmedic issued its formal, written report.  More than four months later, on **August 19, 2020**, Noramco provided to Dishman written notice of its rejection of the Olivetol based on the April 2020, Swissmedic Report.  See SAC at ¶91.

In cases where non-conforming material is timely identified, Section 4.3.3 provides that the non-conforming status must either be (1) accepted by Dishman or (2) established by an independent testing laboratory though the testing procedure outlined in Section 4.3.2 of the Supply Agreement. *See* SAC Ex. 1 at 1 at § 4.3.1.  Section 4.3.3 further provides that "[t]he remedies provided by this Section 4.3 shall be the sole and exclusive remedies of NORAMCO in respect to any out of Specification of Material that was rejected." *Id.*

The SAC does not allege that Dishman has "accepted" the finding that the Olivetol it supplied to Noramco "does not meet the applicable requirements or Specifications" set forth in the Supply Agreement. *See, e.g.*, Ex. 1 at § 4.3.3.  Nor does the SAC allege that rejected Olivetol was tested in accordance with the procedures outlined in Section 4.3.2 of the Supply Agreement.  Dishman's Answer to the SAC makes clear that Dishman has denied any breach of the contract alleged by Noramco.  (*See* D.I. 37 at ¶¶ 29, 56-57, 61-64, 81-91, 103, 109).

## IV.  LEGAL STANDARDS

Pursuant to FED. R. CIV. P. 12(c) ("Rule 12(c)"), a party may move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial ...."  FED. R. CIV .P.12(c).  Courts evaluating Rule 12(c) motions may grant judgment on the pleadings, thereby disposing of one or more claims in a lawsuit, if "'the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law.'" *Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir. 2008) (quoting *Jablonski v. Pan Am. World Airways, Inc.*, 863 F.2d 289, 290-91 (3d Cir. 1988)).  In deciding whether judgment on the pleadings is appropriate, courts may consider the pleadings, corresponding exhibits thereto, and documents incorporated by reference.  *See Butamax Advanced Biofuels LLC v. Gevo, Inc.*, No. 11-54-SLR, 2012 WL 2365905, at *1 (D. Del. June 21, 2012).

"The purpose of judgment on the pleadings is to dispose of claims where the material facts are undisputed and judgment can be entered on the competing pleadings and exhibits thereto, and documents incorporated by reference." *Venetec Int'l, Inc. v. Nexus Med., LLC*, 541 F. Supp. 2d 612, 617 (D. Del. 2008).  Judgment on the pleadings is appropriate to dispose of claims when the pleadings show that the parties' only disputes concern questions of law to be resolved by the court.  *See Jang v. Boston Scientific Scimed, Inc.*, Civ. No. 10-681-SLR, 2011 WL 4527319, at *3 (D. Del. Sept. 30, 2011).

When deciding a Rule 12(c) motion for judgment on the pleadings, the motion "is analyzed under the same standards that apply to a Rule 12(b)(6) motion." *Revell v. Port Auth.*, 598 F.3d 128, 134 (3d Cir. 2010). That is, the court must view all facts and inferences drawn

from the pleadings in the light most favorable to the non-moving party. *Green v. Fund Asset Mgmt., L.P.*, 245 F.3d 213, 220 (3d Cir. 2001).

With regard to affirmative defenses, a majority of the district courts within the Third Circuit that have addressed the issue have determined that the pleading requirements of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), do not apply to the pleading of affirmative defenses. *See Bayer CropSci. AG v. DowAgroScis. LLC*, 2011 WL 6934557, at *1 (D. Del. Dec. 30, 2011), *Masimo Corp. v. Philips Elec. N. Am. Corp.*, No. CV 09-80-LPS, 2015 WL 2406155, at *3 (D. Del. May 18, 2015). FED. R. CIV. P. 12(b)(6) does not offer a mechanism for dismissing affirmative defenses because it refers only to "claim[s]." *See Wyeth Holdings Corp. v. Sandoz, Inc.*, 2012 WL 600715, at *4 (D. Del. Feb. 3, 2012). "The purpose of judgment on the pleadings is to dispose of claims where the material facts are undisputed and judgment can be entered on the competing pleadings and exhibits thereto, and documents incorporated by reference." *Venetec Int'l, Inc. v. Nexus Med., LLC*, 541 F.Supp. 2d 612, 617 (D. Del. 2008).

Courts that have addressed Rule 12(c) motions on affirmative defenses have treated them as motions under 12(f) – which more appropriately addresses the sufficiency of an affirmative defense. *See Intell. Ventures I LLC v. Symantec Corp.*, No. CV 13-440-LPS, 2014 WL 4773954, at *1 (D. Del. Sept. 24, 2014) ("Therefore, despite IV's characterization of this motion as a Rule 12(c) motion, the Court will treat IV's motion as one to strike Defendant's affirmative defenses pursuant to Rule 12(f)."). FED. R. CIV. P. 12(f) provides: "The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." "When ruling on a motion to strike, the [c]ourt must construe all facts in favor of the nonmoving party

and deny the motion if the defense is sufficient under the law. Further, a court should not grant a motion to strike a defense unless the insufficiency of the defense is clearly apparent." *Symbol Techs., Inc. v. Aruba Networks, Inc.*, 609 F. Supp. 2d 353, 356 (D. Del. 2009) (citations omitted) (internal quotation marks omitted). ""As a general matter, motions to strike under Rule 12(f) are disfavored." *Fesnak & Assocs., LLP v. U.S. Bank Nat'l Ass'n*, 722 F. Supp. 2d 496, 502 (D. Del. 2010).

## V.  ARGUMENT

There is a substantial factual dispute in this matter, and Dishman's Answer to the SAC clearly and unambiguously denies the allegations at the heart of Noramco's case.  More specifically, Dishman has denied that it breached the Supply Agreement.  It is Dishman's position that Noramco breached the terms of the Supply Agreement, and that Dishman's conduct did not constitute a breach of the agreement.  In this respect, the primary allegations of Noramco's SAC have been adequately denied by Dishman and Noramco's Motion for Judgment should be denied.

### A.  Noramco Failed to Timely Notify Dishman of Its Rejection

As detailed in the factual recitation above, the disputed Olivetol was received by Noramco on April 14, 2020, and Dishman notified Noramco of the results of the Swissmedic Report on April 17, 2020, before Swissmedic issued the formal written report of the audit results that noted a deficiency in an area of the plant that was not involved in the production of Olivetol..  While Dishman disputes that the Swissmedic Report proves the supplied Olivetol was

7

non-conforming,[1] the Swissmedic Report forms the basis for Noramco's allegation of breach of the Supply Agreement in the SAC. In other words, Noramco contends Dishman breached the agreement by providing product that did not satisfy the requirements of the Supply Agreement because of the conclusions reached in the Swissmedic Report. Noramco denies that the Swissmedic report standing alone proves breach of the Supply Agreement by Dishman. *See* D.I. 37 at ¶¶ 56 and 64. This dispute alone is enough to deny Noramco's motion in its entirety.

      The Supply Agreement expressly identifies a procedure for cases where product shipped is non-conforming. Second Amended Complaint Ex. 1 at Sec. 12.3 ("any disputes with respect to non-conforming material … shall be resolved in accordance with Section 4.3 above"). Specifically, if the Swissmedic Report proved that the Olivetol was non-conforming (which Dishman disputes), then Noramco was required to provide written notice of its rejection of the Olivetol no later than 30 days after April 14, 2020 (the date it received the Olivetol), i.e., May 14, 2020. *Id.* at Sec. 4.3.1. If the Latent Defect provision of the Supply Agreement were used, then Noramco would have had fifteen (15) business days from April 17, 2020 (the date it was notified of the results of the yet to issue Swissmedic Report) to notify Dishman that it was rejecting the Olivetol. *Id.* According to its own factual recitation, Noramco did not follow these procedures. The SAC alleges that written notification of Noramco's rejection was not provided

---

[1] Dishman supplied Noramco with both Olivetol and Methandienol. Swissmedic did not inspect the plants where Olivetol and Methandienol were manufactured by Dishman. According to Dishman's internal analysis both the Olivetol and Methandienol supplied to Noramco met all required specifications. Noramco accepted and used the supplied Methandienol and has only raised a dispute concerning the supplied Olivetol.

until *August 19, 2020.* See SAC ¶ 91. Thus, Noramco failed to comply with the express terms of the Supply Agreement.

### B. Noramco Failed to Adhere to the Testing Protocols in the Supply Agreement

Even if Noramco had given timely notice of its rejection of the allegedly non-conforming Olivetol – which it did not – it would still be unable to pursue a claim under the Supply Agreement because it failed to follow the testing protocols specified in Section 4.3.2 of the Supply Agreement.

As detailed above, when a shipment of material is rejected under the Supply Agreement, Noramco is only entitled to relief if (a) Dishman *acknowledges in writing* that the material it supplied did not meet the applicable requirements or specification within two (2) business days from the date of the receipt of the written notice of rejection *or* (b) an independent testing laboratory has determined that the supplied material was non-conforming. *See* Ex. 1 at Section 4.3.2. Section 4.3.2 sets forth the details for how an independent testing laboratory shall perform an analysis on disputed material. *Id.* The laboratory must be a "nationally recognized laboratory" that is mutually agreed to by both parties "in advance" of the transmission of the sample. *Id*. The Supply Agreement further provides that the laboratory's finding will be binding on both parties. *Id*. The SAC contains no allegation that a representative of Dishman who was authorized to act under the terms of the Supply Agreement acknowledged in writing within two business days of August 19, 2020 that the Olivetol it supplied to Noramco did not meet the requirements or specifications of the Supply Agreement. Dishman expressly denies that anyone with authority to act made any such representation. See D.I. 37 at ¶¶ 96-98. The SAC further contains no allegations that Noramco and Dishman mutually agreed to a nationally recognized

laboratory to test the disputed Olivetol and that such laboratory determined that the Olivetol failed to meet the requirements and specification of the Supply Agreement. Without any allegation of fact on these issues, there is no way Noramco could be entitled to a judgment based solely on the pleadings that have been filed to date in this matter.

### C. Dishman's Acknowledgement that the Documents Attached to the SAC Speak For Themselves is Not an Admission as to Any Facts or to Liability

A litigant's "failure to deny that documents are what they purport to be, combined with a statement that the documents 'speak for themselves,' may constitute an admission as to their authenticity" but does not constitute an admission as to their conclusions. *See In re World Health Jets LLC*, 610 B.R. 118 (Bankr. S.D. Miss 2019); *see also Kleiman v. Wright*, No. 18-CV-80176, 2020 WL 11420664, at *8 (S.D. Fla. Nov. 18, 2020) ("… the Court does not agree with Plaintiffs that Defendant's statement that a document "speaks for itself" constitutes a judicial admission that binds Defendant to the authenticity, veracity, and supposed plain meaning of each document."); *Agrelo v. Meloni Law Firm*, No. 14-21192-CIV, 2017 WL 10636451, at *1 (S.D. Fla. Sept. 22, 2017) (refusing to deem as admitted response that stated that document "speaks for itself" and which also denied allegations); *Westgate Fin. Corp. v. Cotswold Indus., Inc.*, No. 1:09-CV-2627-WSD, 2009 WL 10211922, at *5 (N.D. Ga. Dec. 31, 2009) (denying motion to strike portions of answer where the responses contained the phrase "the document speaks for itself" along with admissions and denials of allegations).

Dishman has denied Noramco's clams that Dishman breached the Supply Agreement and that Noramco is entitled to any relief in this matter. Dishman's responses to the SAC on these issues are clear and unequivocal:

**29.** As of February 28, 2020, the Facility was not in compliance with the cGMPs requirement pursuant to Section 1.4 of the Supply Agreement.

**ANSWER:** Denied as to any legal conclusion, and generally denied.

**56.** As a result of the EDQM/Swissmedic inspection Dishman was prohibited from distributing the Materials.

**ANSWER:** Denied as to any legal conclusions. As to factual allegations, denied.

**64.** The Swissmedic EDQM inspection revealed that the manufacturing procedures at the Facility were subject to a "critical" observation.

**ANSWER:** Denied as to any legal conclusions, and generally denied.

**85.** In accordance with cGMP, no efforts to cure are available to Dishman because the Material was manufactured under non-cGMP conditions, regardless of futher testing or evaluation.

**ANSWER:** Denied as to legal conclusions and generally denied.

**86.** Optional laboratory testing contemplated under the Supply Agreement would be futile because the material is deemed "adulterated" by the applicable law and regulations.

**ANSWER:** Denied as to legal conclusions and generally denied.

**89.** As provided under the Agreement, Noramco had the right to reject any non-conforming product and demand recall of same.

**ANSWER:** Denied as to legal conclusions and generally denied.

**109.** Defendant owes a total amount due of $600,500.00 plus ongoing storage costs, per diem interest and costs.

**ANSWER:** Denied as to legal conclusions and generally denied.

**116.** In breach of the Agreement, Dishman failed to manufacture the Material at a cGMP compliant facility, in accordance with applicable laws and the Quality Agreement, failed to inform Noramco of the relevant regulatory inspection, failed to refund and process return of the Rejected Material and caused Noramco to incur substantial costs for storage of $2000 per month.

**ANSWER:** Denied as to legal conclusions and generally denied.

> **118.** Because Dishman's Material is not cGMP compliant, and Dishman cannot cure or replace the Rejected Material. Noramco is entitled to a full refund of all prior payments for the Rejected Material pursuant to Section 4.3 of the Agreement.
>
> **ANSWER:** Denied as to legal conclusions and generally denied.

D.I. 37 (Answer to SAC).

The mere fact that Dishman has admitted that the Swissmedic report attached to the Noramco SAC is authentic and was quoted accurately is not an admission of any liability in this matter. Noramco's attempts to portray it as such should be rejected by the Court.

Further, not only did the U.S. District Court for the Southern District of Florida address the same issue as the one raised here, the court also explained why the two cases Noramco relies on, *Charleston v. Salon Secrets Day Spa, Inc.*, No. CIV.A. 08-5889, 2009 WL 1795529 (E.D. Pa. June 24, 2009), and *In re Cotter*, No. 08-12504 NLW, 2011 WL 5900811 (Bankr. D.N.J. Oct. 24, 2011), are inapposite:

> Upon review, the Court does not agree with Plaintiffs that Defendant's statement that a document "speaks for itself" constitutes a judicial admission that binds Defendant to the authenticity, veracity, and supposed plain meaning of each document. The pleading's statement invokes none of these qualities other than generally noting that the allegation at issue is based on an email or document that "speaks for itself" but for which Defendant "denies any erroneous, incomplete, or out-of-context characterization of it, and any inaccurate inferences or conclusions derived from it." Although Defendant did not expressly deny the referenced allegation in the SAC in and of itself, the very first sentence of the Amended Answer explicitly stated that Defendant "denies each and every allegation" in the SAC "[e]xcept to the extent expressly admitted here." ECF No. [87] at 1. Further, Defendant's pleading stated that he "does not admit the accuracy, validity, admissibility, or appropriateness of any of the [e]xhibits to the" SAC. *Id.*
>
> \* \* \* \* \*
>
> Plaintiffs' non-circuit authorities involving responses that a "document speaks for itself" are distinguishable. For instance, in *Charleston v. Salon Secrets Day Spa, Inc.*, No. CIV.A. 08-5889, 2009 WL 1795529, at *1 (E.D. Pa. June 24, 2009), the

12

> defendant expressly conceded that when it stated the "document speaks for itself," "this is equivalent to an admission," and the court granted leave to amend. In *In re Cotter*, No. 08-12504 NLW, 2011 WL 5900811, at *8 (Bankr. D.N.J. Oct. 24, 2011), the court deemed admitted the defendant's responses as to the information in the documents rather than striking the answer because the debtor did not allege any prejudice or harm from the responses that the "document speaks for itself" and defendant explained that its response was "merely attempting to respond to Debtor's legal conclusions that were masquerading as factual assertions in the Complaint." . . . . Here, by contrast, Defendant does not concede that his responses were equivalent to an admission, the responses are tied to specific documents, and he explicitly denied "any erroneous, incomplete, or out-of-context characterization of [the document], and any inaccurate inferences or conclusions derived from it." Thus, to the extent Defendant admitted anything, it was not as to the documents' authenticity, interpretation, or correctness.

*Kleiman v. Wright*, Case No. 18-cv-80176-BLOOM/Reinhart, 2020 WL 11420664, at *8, *8 n.10 (Nov. 18, 2020). The Southern District of Florida continued:

> Here, there is no deliberate, clear, and unambiguous admission by Defendant that the emails and other documents referenced in the SAC are accurate, authentic, or otherwise subject to Plaintiffs' interpretation. Instead, the response admitted only that the words reflected in the exhibit appear in the document at issue. *See Pushko*, 2008 WL 10505502, at *2. The Amended Answer does not operate so broadly under the present circumstances to "admit" as unchallenged the documents' validity, meaning, and accuracy.

*Id.* at *9. The same reasoning applies here, and Noramco's motion should be denied.

### D.  Dishman's Affirmative Defenses Are Properly Pled

As discussed above, Noramco's Rule 12(c) motion relating to Dishman's affirmative defenses should be analyzed under Rule 12(f). When all the facts recited above are viewed in favor of Dishman, Dishman's affirmative defenses are clearly sufficient under the law:

1. Noramco has failed to state a claim upon which relief can be granted because Noramco did not adhere to the notice and testing procedures set forth in the Supply Agreement, thereby breaching the Agreement and not entitling Noramco to any relief on its claim that the Olivetol may have been non-confirming.

13

2.      Noramco's claims are barred by latches, waiver, estoppel, and improper notice of breach because Noramco waited too long to formally reject the Olivetol based on the express terms of the Supply Agreement.

3.      Noramco's claims are barred by its failure to mitigate and the doctrine of unclean hands because, had Noramco given timely notice of rejection, Dishman could have performed a risk analysis on the subject Olivetol to prove that it had not been contaminated by the non-compliant conditions identified in areas of Dishman's plant that were not associated with Olivetol production.  Such as assessment was performed for several other clients who were able to use successfully use Dishman's products despite the issuance of the Swissmedic report.

4.      Noramco's efforts to use of Dishman employee emails to try and alter the notice and testing requirements of the Supply Agreement are barred by the parole evidence rule because the employees that wrote those emails were not authorized to modify the Supply Agreement's terms and did not intend to do so.

5.      Noramco's claims for breach should fail because Dishman substantially performed under the contract by supplying Olivetol that was suitable for use and would have passed a risk assessment analysis with proper testing if it had been performed within the stability period of the product.

Based upon these contentions, there remain sufficient factual disputes that would preclude granting a judgment on the pleadings as to Dishman's affirmative defenses.

## VI.  CONCLUSION

Noramco and Dishman are sophisticated parties that negotiated a detailed Supply Agreement which specifies exactly how disputes relating to the provision of non-conforming

materials are to be resolved. Noramco failed to follow the requirements of the Supply Agreement with regard to resolving the disputes alleged in the SAC. Dishman's Answer makes clear that, not only does it deny any breach of the Supply Agreement, but also, because Noramco is bound by the terms of the contract it entered into, all of Noramco's claims must fail. For the foregoing reasons, there is a substantial factual dispute as to whether a breach of the Supply Agreement occurred and that will need to be resolved at trial. Therefore, Plaintiff's Motion for Judgment on the Pleadings must be denied.

Dated: June 9, 2022
Wilmington, Delaware

Respectfully submitted,

STAMOULIS & WEINBLATT LLC

 /s/Stamatios Stamoulis
Stamatios Stamoulis (#4606)
800 N. West Street, Third Floor
Wilmington, DE 19801
(302) 999-1540
stamoulis@swdelaw.com

*Attorney for Defendant Dishman USA, Inc.*

15

**CERTIFICATE OF SERVICE**

I hereby certify that on June 9, 2022, I electronically filed the above document(s) with the Clerk of Court using CM/ECF, which will send electronic notification of such filings to all registered counsel.

*/s/ Stamatios Stamoulis*
Stamatios Stamoulis (#4606)

1