IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| NORAMCO LLC, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Civil Action No. 21-1696-WCB |
| | § | |
| DISHMAN USA, INC., | § | |
| | § | |
| *Defendant*. | § | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Noramco LLC ("Noramco") has filed a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). Noramco argues that it is entitled to judgment as a matter of law on its breach of contract claim against defendant Dishman USA, Inc. ("Dishman"), and on Dishman's affirmative defenses. Dkt. No. 38. For the reasons set forth below, Noramco's motion is GRANTED IN PART and DENIED IN PART.

I.  **Background**

This case involves a contract dispute regarding a supply agreement (the "Agreement") between Noramco and Dishman.[1] Noramco, a manufacturer of active pharmaceutical ingredients ("APIs"), entered into the Agreement with Dishman, in which Dishman agreed to supply Noramco with olivetol, an ingredient used in the production of Noramco's APIs. The Agreement provided that Dishman would produce the olivetol and supply it to Noramco at Dishman's facility in Lodariyal, India. The Agreement further provided that the olivetol that Noramco supplied would comply with "current good manufacturing practices" ("cGMP" or "GMP") as required by

---

[1] The facts in this section are recited as alleged in Noramco's Second Amended Complaint, Dkt. No. 35.

1

standards promulgated by the U.S. Food and Drug Administration and the European Union. Dkt. No. 35 at ¶¶ 10–11.

In February 2020, while Dishman was manufacturing the olivetol to be supplied under the Agreement, the Swiss Agency for Therapeutic Products ("Swissmedic") and the European Directorate for the Quality of Medicines and HealthCare ("EDQM") inspected Dishman's facility in Lodariyal.[2] Following its investigation, Swissmedic issued a report indicating that it found several "major" deficiencies at the facility, one of which was "critical." *Id.* at ¶ 48. The report added that Dishman's "approach on Materials management . . . was considered as not in compliance with EU GMP." *Id.*

In March 2020, Dishman manufactured six batches of olivetol. On or about March 24, 2020, the batches of olivetol were shipped from Dishman to Noramco. Dishman did not inform Noramco at that time of the Swissmedic and EDQM regulatory inspection of the Dishman facility that had occurred prior to the shipment of the olivetol to Noramco.

In April 2020, after learning of the Swissmedic and EDQM inspection, Noramco notified Dishman of its "concerns about the inspection and potential rejection of the [olivetol]." *Id.* at ¶¶ 41–42. The two parties then conferred for several months regarding the status of the olivetol. *See, e.g., id.* at ¶¶ 43–45, 49–54, 65–77. On or about August 11, 2020, Noramco requested that the olivetol be returned to Dishman's facility, and on August 19, 2020, Noramco notified Dishman in writing that the olivetol Dishman supplied to Noramco did not comply with the Agreement. *Id.* at ¶¶ 90–91.

---

[2] Noramco alleges that Swissmedic is the "applicable Swiss surveillance authority for GMP compliance." Dkt. No. 39 at ¶ 15.

Noramco's complaint alleges that following Noramco's rejection of the olivetol, Dishman agreed to return the olivetol and to issue a full refund for the material. Dishman disputes that assertion. *Id.* at ¶¶ 96–97; Dkt. No. 37 at ¶ 97. After Dishman failed to take the olivetol back and issue a refund, Noramco brought this lawsuit against Dishman in December 2021.

Since filing its original complaint, Noramco has amended its complaint on two occasions. The operative pleading for purposes of the present motion is Noramco's Second Amended Complaint, Dkt. No. 35. Dishman filed an Answer to that complaint, Dkt. No. 37, and Noramco subsequently filed this motion for judgment on the pleadings, Dkt. No. 38. On July 19, 2022, I held oral argument on Noramco's motion.

## II.  Legal Standard

Under Federal Rule of Civil Procedure 12(c), "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." A Rule 12(c) motion "will not be granted unless the movant clearly establishes that no material issue of fact remains to be resolved and that [it] is entitled to judgment as a matter of law." *Jablonski v. Pan Am. World Airways, Inc.*, 863 F.2d 289, 290 (3d Cir. 1988) (internal quotation marks and citation omitted). The standard that applies to a Rule 12(b)(6) motion to dismiss for failure to state a claim also applies to motions brought under Rule 12(c); that is, in the common situation in which the defendant moves to dismiss the complaint, the court "must accept the truth of all factual allegations in the complaint and must draw all reasonable inferences in favor of the non-movant." *Revell v. Port Auth. of New York, New Jersey*, 598 F.3d 128, 134 (3d Cir. 2010). In the less common situation in which the plaintiff moves for judgment on the pleadings, the court must accept as true the factual allegations in the defendant's answer and construe the factual allegations in the light

3

most favorable to the defendant.³ *United States v. Blumenthal*, 315 F.2d 351, 352 (3d Cir. 1963); *Fanatics Retail Grp. (Dreams), LLC v. Truax*, No. 20-cv-0794, 2020 WL 7042873, at *2 (D. Del. Dec. 1, 2020). More generally, "[t]he purpose of judgment on the pleadings is to dispose of claims where the material facts are undisputed and judgment can be entered on the competing pleadings and exhibits thereto, and documents incorporated by reference." *Venetec Int'l, Inc. v. Nexus Med., LLC*, 541 F. Supp. 2d 612, 617 (D. Del. 2008).

### III.   Discussion

#### A.   *Breach of Contract*

Noramco's principal argument in support of its motion is that Dishman's Answer "simply does not deny any essential allegation raised by Noramco." Dkt. No. 39 at 6. Specifically, Noramco argues that Dishman's statements in its Answer that certain documents speak for themselves amount to admissions of the corresponding allegations in the complaint. *See id.* at 6–7. Dishman responds by arguing that those statements do not constitute admissions and that there are substantial factual disputes to be resolved in this case.

Two examples of the allegations in Noramco's Second Amended Complaint and Dishman's responses in its Answer provide helpful context for assessing Noramco's argument. First, paragraph 56 of the Second Amended Complaint alleges that "[a]s a result of the EDQM/Swissmedic inspection Dishman was prohibited from distributing the [olivetol]." Dkt. No. 35 at ¶ 56. In its Answer, Dishman responded that the allegation was "[d]enied as to any legal

---

³ Noramco states that in this Rule 12(c) proceeding the court must accept all allegations of Noramco's complaint as true. Dkt. No. 41 at 6. That would be true if it were Dishman, the defendant, that had moved for judgment on the pleadings, but it is not true when it is Noramco, the plaintiff that has sought relief under Rule 12(c). When a plaintiff seeks judgment on the pleadings, the plaintiff is obviously not entitled to have the allegations in its complaint treated as true.

conclusions" and "[a]s to factual allegations, the document [the Swissmedic report] speaks for itself." Dkt. No. 37 at ¶ 56.

Second, paragraph 97 of the Second Amended Complaint alleges that "[o]n October 6, 2020, Dishman wrote to Noramco, and Dishman agreed in writing to provide a full refund to Noramco over time." Dkt. No. 35 at ¶ 97. In its Answer, Dishman responded as follows: "Denied. The document [a chain of emails between Noramco and Dishman representatives] speaks for itself." Dkt. No. 37 at ¶ 97.

In general, a statement in an answer that a document "speaks for itself" is permissible "if the answer also expressly includes an admission or denial of the allegation." *LumaSense Techs., Inc. v. Advanced Eng'g Servs.*, LLC, No. 20-CV-07905, 2021 WL 2953237, at *3 (N.D. Cal. July 14, 2021); *see also Pavlik v. FDIC*, No. 10-cv-816, 2010 WL 3937621, at *3 (N.D. Ill. Oct. 5, 2010) (declining to strike "document speaks for itself" responses in answer when the defendant "also either admitted or denied the[] allegations"); *Westgate Fin. Corp. v. Cotswold Indus., Inc.*, No. 09-CV-2627, 2009 WL 10211922, at *5 (N.D. Ga. Dec. 31, 2009) (same); *Eternal Invs., L.L.C. v. City of Lee's Summit, Mo.*, No. 05-0521-CV, 2006 WL 573919 (W.D. Mo. Mar. 8, 2006) (noting that "terms of art" such as "the document speaks for itself" and "legal conclusions," when included in responsive pleadings that also admit or deny the relevant allegations, do not "prevent plaintiff from understanding or comprehending defendant's Answer").

In this case, Dishman's Answer offers both a general denial and specific responses to the allegations where relevant. At the beginning of its answer, Dishman states that it "denies all allegations in Plaintiffs' Second Amended Complaint except those expressly admitted below." Dkt. No. 37 at 1. In addition to that general denial, many of the responses in the Answer specifically admit or deny the allegations before stating that "the document speaks for itself." *See,*

5

*e.g.*, Dkt. No. 37 at ¶¶ 96–98, 100–01. Other responses state that the allegation is "[d]enied as to any legal conclusions," but "[a]s to factual allegations, the document speaks for itself." *See, e.g., id.* at ¶¶ 44–48. Those responses make clear that Dishman is not intending to admit to the allegations in the complaint in full. At most, the statements that a document "speaks for itself" can be understood as an admission that the corresponding document attached to the complaint is authentic and is quoted accurately in the complaint.

Noramco cites two cases, neither of which provides persuasive support for its position that the responses in Dishman's Answer constitute admissions of liability. In *Charleston v. Salon Secrets Day Spa, Inc.*, the court granted in part the plaintiff's motion to strike various responses from the defendant's answer. No. 08-cv-5889, 2009 WL 1795529, at *1 (E.D. Pa. June 24, 2009). The court struck paragraphs from the answer stating that a document "speaks for itself." *Id.* In that case, however, the defendant conceded that a statement indicating that a document "speaks for itself" was "equivalent to an admission." *Id.* No such concession has been made by Dishman in this case.

Similarly, in *In re Cotter*, the court held that "the Defendants' responses that the 'document speaks for itself' is deemed an admission" if "no response is provided" to the allegation in the complaint. No. 08-12504, 2011 WL 5900811, at *8 (Bankr. D.N.J. Oct. 24, 2011). In that case, the defendants did not offer a general denial and did not otherwise respond to the allegations for which they stated that a document "speaks for itself." *See generally Cotter v. Skylands Cmty. Bank*, Adv. No. 11-1619, Dkt. No. 5 (Bankr. D.N.J. June 8, 2011). In this case, by contrast, Dishman has offered both a general denial and specific denials of many allegations in the complaint, including each of the allegations as to which Dishman's Answer stated that the document "speaks for itself."

6

In *Kleiman v. Wright*, No. 18-cv-80176, 2020 WL 11420664, at *8 & n.10 (S.D. Fla. Nov. 8, 2020), the plaintiff relied on the *Charleston* and *Cotter* cases in support of its argument that the statement that certain documents "speak for themselves" in the defendant's answer constituted a judicial admission. The court noted that the defendant in that case denied "each and every allegation" except to the extent expressly admitted and did not concede that his responses were equivalent to an admission. *Id.* at *8 & n.10. The court concluded that "to the extent Defendant admitted anything, "it was not as to the documents' authenticity, interpretation, or correctness." *Id.* at n.10.

Similar circumstances are present here. Dishman issued a general denial as to all allegations not expressly admitted to, and added a specific denial accompanying each paragraph in which it stated that a document "speaks for itself." *See* Dkt. No. 37 at 1 & ¶¶ 10, 11, 17, 18, 19, 24, 26, 27, 28, 30, 33, 34, 44, 45, 46, 47, 48, 55, 60, 96, 97, 98 & 100. Moreover, it is clear from Dishman's Answer that Dishman did not intend to admit the substance of Noramco's allegations. And there is no risk of confusion about which documents Dishman's responses refer to. Accordingly, Dishman's responses in its Answer stating that a document "speaks for itself" do not constitute admissions to the allegations in the respective paragraphs of Noramco's Second Amended Complaint.

With that proposition established, it is apparent that the pleadings in this case point to several factual disputes. For instance, the parties dispute whether the Swissmedic report conclusively establishes that Dishman's olivetol production did not comply with cGMP, and whether the Swissmedic and EDQM inspection actually covered the facility where the olivetol was manufactured. *See* Dkt. No. 40 at 11; Dkt. No. 39 at 7. The parties also dispute whether Noramco timely notified Dishman that the olivetol it supplied was non-conforming. *See* Dkt. No. 40 at 7–

9; Dkt. No. 39 at 4–5. And the parties appear to dispute the amount of damages to which Noramco would be entitled if liability is established. *See* Dkt. No. 37 at 23. Therefore, this is not a case in which "no material issue of fact remains to be resolved" such that Noramco "is entitled to judgment as a matter of law" based on the pleadings alone. *See Jablonski*, 863 F.2d at 290 (internal quotation marks and citation omitted). Accordingly, Noramco's motion is denied as to its breach of contract claim.

### B. *Affirmative Defenses*

Noramco also argues that it is entitled to judgment as a matter of law on Dishman's affirmative defenses. The Third Circuit has held that the standards that apply to Rule 12(c) motions are the same as those that apply under Rule 12(b)(6). *Revell*, 598 F.3d at 134. Because Rule 12(b)(6) applies only to "claim[s]," courts have held that a request to dismiss an affirmative defense under Rule 12(b)(6) is more appropriately treated as a motion to strike under Rule 12(f). *See, e.g.*, *Wyeth Holdings Corp. v. Sandoz, Inc.*, No. 09-cv-955, 2012 WL 600715, at *4 (D. Del. Feb. 3, 2012), *report and recommendation adopted*, 2012 WL 749378 (Mar. 1, 2012); *Huffman v. Remstar Int'l, Inc.*, No. 08-CV-157, 2009 WL 1445967, at *1 (E.D. Tex. May 21, 2009); *Cal. Expanded Metal Prods. Co. v. Klein*, No. 18-cv-0659, 2018 WL 6249793, at *7 (W.D. Wash. Nov. 29, 2018). Judge Stark has applied that same reasoning in construing a Rule 12(c) motion regarding affirmative defenses as a Rule 12(f) motion to strike. *Intell. Ventures I LLC v. Symantec Corp.*, No. 13-cv-440, 2014 WL 4773954, at *1 (D. Del. Sept. 24, 2014). Accordingly, I will treat Noramco's motion, as it applies to Dishman's affirmative defenses, as a motion to strike those defenses under Rule 12(f).

Rule 12(f) permits a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." As a general matter, Rule 12(f)

motions are "disfavored." *Fesnak & Assocs., LLP v. U.S. Bank Nat. Ass'n*, 722 F. Supp. 2d 496, 502 (D. Del. 2010). On a motion to strike, the court should construe all facts in favor of the nonmoving party and "should not grant a motion to strike a defense unless the insufficiency of the defense is clearly apparent." *Symbol Techs., Inc. v. Aruba Networks, Inc.*, 609 F. Supp. 2d 353, 356 (D. Del. 2009) (internal quotation marks and citation omitted).

The basis for Noramco's motion to strike Dishman's affirmative defenses is essentially the same as the basis for its Rule 12(c) motion regarding its breach of contract claim. That is, Noramco contends that Dishman has admitted to the allegations in the Second Amended Complaint and therefore Dishman does not have any viable affirmative defenses. As noted above, Dishman's statements that a document "speaks for itself" do not constitute admissions, and there are substantial factual disputes to be resolved in this case. There are, however, some affirmative defenses as to which there is no genuine dispute of material fact.

First, Dishman does not contest Noramco's assertion that there is no dispute of material fact regarding Dishman's affirmative defenses of lack of privity and the statute of frauds. Dishman's failure to respond to those arguments in its brief constitutes a concession that there is no dispute of material fact with respect to those defenses. *See Hausknecht v. John Hancock Life Ins. Co. of N.Y.*, 334 F. Supp. 3d 665, 682 (E.D. Pa. 2018) ("By failing to respond to a majority of Defendant's arguments, Plaintiffs have conceded them, and thus, Plaintiffs' . . . claims will be dismissed."); *Goodwine v. Keller*, No. 09-cv-1592, 2012 WL 4482793, at *1 (W.D. Pa. Sept. 26, 2012) ("Plaintiff fails to respond to Defendants' arguments in favor of dismissal and so has apparently conceded that, as a matter of law, Defendants are entitled to a finding of absolute or qualified immunity . . . ."). At the oral argument on the present motion, Dishman agreed to

withdraw the defenses of lack of privity and statute of frauds. Accordingly, Noramco's motion is denied as moot with respect to those two defenses.

Second, Dishman's affirmative defense of unclean hands lacks a sufficient legal basis. In its responsive brief, Dishman argues that the doctrine of unclean hands applies because "had Noramco given timely notice of rejection, Dishman could have performed a risk analysis on the subject Olivetol to prove that it had not been contaminated." Dkt. No. 40 at 14. The doctrine of unclean hands, however, applies "in circumstances where the litigant's own acts offend the very sense of equity to which he appeals." *Nakahara v. NS 1991 Am. Tr.*, 718 A.2d 518, 522 (Del. Ch. 1998). In order for the unclean hands doctrine to apply, the allegedly wrongful conduct must be "knowing or intentional." *See Neo Gen Screening, Inc. v. TeleChem Int'l, Inc.*, 69 F. App'x 550, 556 (3d Cir. 2003). Here, Dishman has not alleged that Noramco intentionally delayed in notifying Dishman of the olivetol's non-conformity in order to gain an inequitable advantage of some sort. Moreover, to the extent that Dishman argues that Noramco did not timely notify Dishman of the non-conforming product, that allegation does not raise an issue of unclean hands, but is covered by Dishman's defenses of laches, waiver, estoppel, and improper notice. Accordingly, I will grant Noramco's motion with respect to Dishman's unclean hands defense and strike that defense from Dishman's Answer.

Dishman's remaining affirmative defenses are: failure to state a claim upon which relief can be granted, laches, waiver, estoppel, no breach by Dishman, the parol evidence rule, improper notice, substantial performance, and failure to mitigate. As noted, there are several disputed factual issues in this case, and the remaining defenses implicate those issues to various extents. Because the court "should not strike a defense unless the insufficiency is 'clearly apparent,'" *Fesnak*, 722

10

F. Supp. 2d at 502 (citation omitted), I will deny the portions of Noramco's motion that are directed to those defenses.

### IV. Conclusion

In summary, based on the pleadings, it appears that there are significant factual disputes to be resolved in this case. Noramco is therefore not entitled to judgment on the pleadings in its favor on its breach of contract claim. With respect to the affirmative defenses, I will deny Noramco's motion to strike the affirmative defenses of lack of privity and statute of frauds as moot, and I will grant the motion as it applies to Dishman's unclean hands defense. The remaining affirmative defenses will not be stricken from Dishman's Answer.

Additionally, on July 15, 2022, the parties filed a stipulation to extend the deadline for substantial completion of document production to September 14, 2022. Dkt. No. 45. I will accept that stipulation, but I note that during the teleconference regarding Noramco's Rule 12(c) motion, the parties indicated that they would endeavor to produce any documents they have within a relatively short timeframe. Should either party wish to file an early summary judgment motion prior to the formal end of discovery, the parties should feel free to approach the court with such a request.

IT IS SO ORDERED.

SIGNED this 19th day of July, 2022.

William C. Bryson
_____
WILLIAM C. BRYSON
UNITED STATES CIRCUIT JUDGE