IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| NORAMCO LLC, | § § § | |
| *Plaintiff*, | § § | |
| v. | § § § | Civil Action No. 21-1696-WCB |
| DISHMAN USA, INC., | § § | |
| *Defendant*. | § § § | |

**MEMORANDUM OPINION AND ORDER**

In this breach of contract case, I granted summary judgment to plaintiff Noramco LLC on the issue of liability. Dkt. No. 75. On February 3, 2023, I granted summary judgment to Noramco on the issue of damages. Dkt. No. 92. On the same day, I entered judgment in favor of Noramco in the amount of $601,929.83. Dkt. No. 93. Defendant Dishman USA, Inc., now moves for relief from the judgment under Federal Rule of Civil Procedure 59(e). Dkt. No. 95. The motion is DENIED.

**I.      Background**

This case involves a contract dispute regarding a supply agreement ("the Agreement") entered into by Noramco and Dishman. As part of the Agreement, Dishman agreed to supply olivetol, a material used in the production of active pharmaceutical ingredients, to Noramco. In ruling on Noramco's motion for summary judgment, I held that Dishman breached the Agreement by delivering olivetol that did not comply with the requirements of the Agreement, specifically the

1

requirement that the olivetol comply with "current good manufacturing practices" ("cGMP" or "GMP").[1] Dkt. No. 75 at 13.

After I granted summary judgment on the issue of liability, I directed the parties to meet and confer on the issue of damages, and to file briefs directed to that issue if the parties could not reach agreement. *Id.* The parties filed two rounds of simultaneous briefing, which I construed as cross-motions for summary judgment on the issue of damages. Dkt. Nos. 83–84, 88–89. After concluding that the motions raised exclusively legal questions and questions on which there was no genuine dispute of material fact, I determined the amount of damages to be awarded to Noramco and entered judgment in the case. Dkt. No. 92 at 5, 16; Dkt. No. 93.

One of Dishman's arguments in its briefing regarding damages was that Noramco failed to timely reject the shipment of olivetol that it received from Dishman. I held that Dishman had waived that defense by not raising it in response to Noramco's initial motion for summary judgment and that, in any event, there was no genuine dispute of material fact regarding whether Noramco failed to timely reject the olivetol. Dkt. No. 92 at 5–7. Dishman's Rule 59(e) motion challenges my disposition of that argument.

## II.     Legal Standard

A Rule 59(e) motion to alter or amend a judgment after its entry is a form of extraordinary relief that is granted sparingly. In general, there are four basic grounds on which such a motion may be granted: First, the movant may demonstrate that the motion is necessary to correct manifest errors of law or fact upon which the judgment is based. Second, the motion may be granted so that the moving party may present newly discovered or previously unavailable evidence. Third,

---

[1] A more thorough discussion of the background facts is provided in my order on Noramco's motion for summary judgment. Dkt. No. 75 at 1–4.

the motion will be granted if necessary to prevent manifest injustice. Fourth, a Rule 59(e) motion may be justified by an intervening change in controlling law. 11 Charles Alan Wright et al., Federal Practice & Procedure § 2810.1 (3d ed., April 2022 update).

A motion to alter or amend a judgment (or for relief from a judgment) is a form of motion for reconsideration and is governed by the same principles. The Third Circuit has articulated those principles in the context of a Rule 59(e) motion as requiring one of the following: "(1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct clear error of law or prevent manifest injustice." *Lazaridis v. Wehmer*, 591 F.3d 666, 669 (3d Cir. 2010). As such, a motion that "advance[s] the same arguments" previously raised by the movant does not provide "a proper basis for reconsideration." *Id.*

### III.   Discussion

Dishman argues in its motion for relief from the judgment that there are two "manifest errors of fact that led the Court to the wrong result in its analysis." Dkt. No. 95 at 1. First, Dishman argues that it did not waive its untimely rejection defense because that defense was not within the scope of Noramco's motion for summary judgment. Dkt. No. 95 at 2–4. Second, Dishman argues that the court erred in determining that there was no genuine dispute of material fact regarding whether the non-conformity of the olivetol was latent at the time Noramco rejected the material in August 2020. *Id.* at 4–5.

#### A.   Waiver

With respect to the first argument, Dishman asserts that in a teleconference with the parties I limited the scope of the summary judgment proceedings to the issue of whether the olivetol was compliant with cGMP. In its brief, Dishman cites an excerpt from the transcript of that teleconference in which I indicated the types of arguments that Dishman could make in response

to Dishman's motion. *Id.* at 3 (citing Dkt. No. 95-1 at 22:14–23:19). Dishman appears to take the view that, based on the discussion during the teleconference, Dishman's untimely rejection defense was not within the scope of the arguments it was required to raise in response to Noramco's motion for summary judgment.

Dishman overlooks, however, that in the sentence preceding the excerpt of the teleconference transcript quoted in Dishman's motion, I explained that Noramco's motion would be "a motion for Summary Judgment *in the case*, which would be predicated on the Swissmedic report being dispositive of the question [of cGMP compliance]." Dkt. No. 95-1 at 22:11–14 (emphasis added). And if that statement were not clear enough, Noramco stated plainly in its motion for summary judgment that it was seeking judgment in its favor on the issues of both liability and damages. Dkt. No. 69 at 20. Dishman was therefore on notice that any defenses to liability or damages needed to be raised in response to the motion for summary judgment and that its failure to do so would constitute a waiver of those defenses.

Dishman clearly understood that Noramco's motion for summary judgment was seeking summary judgment in the case, not merely a determination of whether the olivetol at issue was adulterated, i.e., non-compliant with cGMP. In the Summary of the Argument section of its brief, Dishman alluded to its defense of untimely rejection, contending that Noramco "failed to follow the procedures set forth in the Supply Agreement . . . that require . . . timely rejecti[on] of product supplied by Dishman" and that Noramco "could have taken steps to inspect and test the Olivetol . . . but it chose not to do so. . . . Noramco chose instead to demand a full refund for the product *long after the time had passed to return the product in a way that would have allowed Dishman the chance to re-sell it to another willing buyer.*" Dkt. No. 71 at 2, 3 (emphasis added). Those statements refer to Dishman's contention that Noramco was not entitled to a refund, even

4

assuming the adulteration of the olivetol, because Noramco did not promptly return the product to Dishman. The problem is not that Dishman was misled into believing that the summary judgment proceedings were addressed only to the issue of adulteration; the problem is that Dishman did not develop its argument about Noramco's asserted delay in returning the product. Despite referring to that contention in its statement of the issues, Dishman did not elaborate on or even mention that contention in the Argument section of its brief. I therefore found that Dishman had waived its untimely rejection defense by not making a substantive argument on that point in response to Noramco's motion for summary judgment.

Dishman asserts that it cannot be deemed to have waived its defense of untimely rejection, because in the Third Circuit, "affirmative defenses may be raised at any time, even after trial, so long as the plaintiff suffers no prejudice." Dkt. No. 95 at 4 (citing *Clews v. Cnty. of Schuylkill*, 12 F.4th 353, 358 (3d Cir. 2021)). The *Clews* case is inapposite, however. In that case, the court held that a defendant did not waive an affirmative defense when it failed to raise the defense in its answer because there was no suggestion that the plaintiff could have developed additional evidence in discovery "with more explicit notice of the [defense]." *Clews*, 12 F.4th at 358. In the situation presented by this case, the law is clear that a defense is waived when it is not raised in response to a motion for summary judgment.

Several cases standing for that proposition were cited in the court's Memorandum and Order granting summary judgment in this case. *See* Dkt. No. 92 at 6. A number of other cases stand for the same proposition. *See, e.g.*, *Marine Polymer Techs., Inc. v. HemCon, Inc.*, 659 F.3d 1084, 1094 n.4 (Fed. Cir. 2011) ("The failure to raise an affirmative defense in response to a summary judgment motion constitutes a waiver of that defense."); *Diversey Lever, Inc. v. Ecolab, Inc.*, 191 F.3d 1350, 1352 (Fed. Cir. 1999) (defendant's failure to raise its affirmative defense in

5

opposition to summary judgment motion constituted an abandonment of the defense); *United States v. Mottolo*, 26 F.3d 261, 263 (1st Cir. 1994) (same); *United Mine Workers of Am. 1974 Pension v. Pittston Co.*, 984 F.2d 469, 478 (D.C. Cir. 1993) (same).

Quite apart from the issue of waiver, I held in the summary judgment order that even if the defense of untimely rejection were not waived, there was no genuine issue of material fact with respect to whether Noramco timely rejected the olivetol. Dkt. No. 92 at 6-7. The relevant facts are clear: Promptly after receiving the olivetol and learning of the Swissmedic inspection of the site where the olivetol was manufactured, Noramco contacted Dishman regarding its concerns about the Swissmedic inspection and the possible adulteration of the olivetol. In response, Dishman contended that the olivetol was still usable and promised Noramco that it would conduct a "risk analysis" soon to determine whether the olivetol could be used. The parties continued to correspond regarding the issue for several months, at which point Noramco formally rejected the olivetol. In light of those uncontested facts, I ruled that there was no basis to conclude that Noramco had failed to comply with the contractual notification requirements. Therefore, even assuming that the court erred in finding a waiver of the untimely rejection argument, any error on that score would have no effect on the judgment, as the court addressed and rejected Dishman's untimely rejection argument on the merits. Dishman's motion for relief from the judgment is therefore denied as to the waiver issue.

### B. Whether the Defect Was Latent

In its second argument, Dishman contends that the court improperly resolved the factual issue of whether the cGMP non-compliance of the olivetol was a latent defect. This argument amounts to a challenge to the court's disposition on the merits of Dishman's untimely rejection

6

defense. As such, this argument falls with the court's ruling on Dishman's waiver of the untimely rejection defense. In any event, the argument is unpersuasive.

Dishman argues that Noramco had sufficient information by April 28, 2020—or by July 6, 2020, at the latest—to conclude that the olivetol was not compliant with cGMP. Dishman contends that the latter date was the date on which Dishman provided Noramco with a "final cleaning validation and the site master plan that Noramco had requested." Dkt. No. 95 at 5. According to Dishman, that means that "Noramco was not waiting for any additional information when it decided to reject the olivetol more than a month after the final communication from Dishman." *Id.*

In support of its argument, Dishman first cites an email sent to Noramco on April 28, 2020, in which Dishman indicated that "a GMP status for [the olivetol] is not necessary, and working together on a risk analysis would allow [Noramco] to use Dishman material and future supplies." Dkt. No. 95-2. That same email, however, indicated that the risk analysis was a "work in progress" and that more information would be sent to Noramco in the future. *Id.* Thus, no reasonable fact-finder would conclude that Noramco possessed sufficient information at that time to reach a conclusive determination regarding the status of the olivetol.

Dishman next cites an email sent to Noramco on July 6, 2020, in which Dishman provided Noramco with a "Site Master File" and "Cleaning verification procedure(s)." Dkt. No. 95-3. That email was not introduced into the record during either the summary judgment proceedings or the briefing on the issue of damages. Because Dishman has not established that the email is "new evidence" that was not previously available to it, that email cannot serve as the basis for a Rule 59(e) motion. *See Lazaridis*, 591 F.3d at 699.

Accordingly, Dishman has not established that the court committed "a clear error of law" or that Dishman came into possession of "new evidence" that would justify reconsideration on the issue of whether the cGMP non-compliance of the olivetol was a latent defect. *See id.* The motion for relief from the judgment is therefore denied with respect to that issue.

## IV.   Conclusion

For the reasons set forth above, Dishman's motion for relief from the judgment is DENIED.

IT IS SO ORDERED.

SIGNED this 23rd day of February, 2023.

_____
WILLIAM C. BRYSON
UNITED STATES CIRCUIT JUDGE