IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| NORAMCO LLC,<br><br>                Plaintiff,<br><br>        v.<br><br>DISHMAN USA, INC.,<br><br>                Defendant. | Civil Action No. 1:21-cv-01696-WCB |

**PLAINTIFF'S BRIEF IN SUPPORT OF PLAINTIFF'S EMERGENCY MOTION FOR CONTINUATION OF PROVISIONAL REMEDY AGAINST ASSETS PURSUANT TO F.R.C.P. RULE 64**

| | |
|---|---|
| **THE ROSNER LAW GROUP LLC** | **THE BAYNE LAW GROUP LLC** |
| Frederick B. Rosner, Esq. (DE# 3995)<br>Zhao (Ruby) Liu, Esq. (DE #6436)<br>824 Market Street, Suite 810<br>Wilmington, DE 19801<br>Telephone: 302-777-111<br>Email: rosner@teamrosner.com,<br>liu@teamrosner.com | Andrew J. Bayne, Esq.<br>Jennifer M. Mohamed, Esq.<br>116 Village Boulevard, Suite 235<br>P.O. Box 3036<br>Princeton, New Jersey 08543-3036<br>Phone: 609.924.4295<br>Email: abayne@baynelaw.com,<br>jennifer@baynelaw.com |
| | *Attorneys for Plaintiff, Noramco LLC* |

**TABLE OF CONTENTS**

| Sections | Page |
|---|---|

TABLE OF AUTHORITIES……………………………………………………………….........i

1. Relevant Procedural History to the Motion……………………………………….....1

2. Summary of Remedy Sought in Motion……………………………….........................2

3. Noramco's Legal Basis for Seeking Continuation of the Levy to Secure the Satisfaction of Noramco's Potential Judgment……………………………………………….....2

4. Noramco Requests the Court Provisionally Continue the Bank Levy Based Upon Dishman's Undercapitalized Position and Unnecessary Risk of any Potential Judgment Being Uncollectible……………………………………………………………………….5

CONCLUSION……………………………………………………….........................................9

# TABLE OF AUTHORITIES

**Cases**                                                                                                                             **Page**

*Sylvan Equipment Rental Corp. v. C. Washington & Son, Inc.*
679 A.2d 213, 292 N.J. Super 568 (N.J. Super. 1995)……………………………………….7

*Swift & Co. Packers v. Compania Colombiana Del Caribe,S.A.*
339 U.S. 684, 70 S.Ct. 861, 94 L.Ed. 1206 (1950)…………………….............................4

**Statutes**

10 *Del. C.* §3501…………………………………………………………………………...4

10 *Del. C.* §3502…………………………………………………………………………...3

10 *Del. C.* §3507…………………………………………………………………………...3

10 *Del. C.* §3508…………………………………………………………………………..4

**Rules**

Fed. R.of Civ. Pro. 64…………………………………………………………………...2

Del. Del. Ch. Ct. R. 64..………………………………………………………………...…4

Del. Super. Ct. Civ. R. 64(a) ..…………………………………………………………..4

Plaintiff Noramco LLC ("Plaintiff"), by and through undersigned counsel, hereby submits brief in support of its Emergency Motion for Continuation of Provisional Remedy Against Assets Pursuant to F.R.C.P. Rule 64 ("Motion"). In support of the Motion, Plaintiff incorporates the Attorney Affirmation of Andrew J. Bayne ("Bayne Aff.") filed contemporaneous herewith and respectfully submits as follows:

The Third Circuit Court of Appeals recently issued its appellate decision in this matter.[1] The Third Circuit has recognized and affirmed this Court's determination as a matter of law that Dishman in fact breached the parties' Supply Agreement by delivering defective olivetol to Noramco. The Third Circuit reversed and remanded, in part, concerning any factual issues pertaining to effective notice and mitigation.

**1.       Relevant Procedural History to the Motion.**

During the pendency of the appeal, Noramco registered this District Court's Judgment in the State of New Jersey,[2] and on May 2, 2024, the District Court of New Jersey issued appropriate Writs of Execution. Such Writs of Execution were served, and asset levies effectuated under the auspices of the US District Court by the U.S. Marshals Service.[3] Among the assets levied, the US Marshals levied Dishman's Bank Account accessible at a New Jersey Branch of Bank of America, which account Dishman informs had been funded only days before as part of a parent-oriented transaction, meaning all significant funds were bound to pass-through to Dishman's parent company, effectively evading the judgment creditor and otherwise eluding process.

---

[1] *See* Ex. A to Bayne Aff. (USCA 3d. Cir. Opinion, Case No. 23-1396, Dkt. No. 47).

[2] *See* Ex. B to Bayne Aff. (Domesticated DE Order – USDC-NJ Case No. 2:24-mc-0008-ES, Dkt No. 1-3).

[3] *See* Ex. C to Bayne Aff. (NJ Writ of Execution – USDC-NJ Case No. 2:24-mc-0008-ES, Dkt. No. 4).

During the course of the appeal, counsel to the parties had worked through a civil methodology for securing accruing interest on the potential judgment. However, Dishman has disagreed to the continuation of the levy and the interest payments following the partial remand by the Third Circuit. This is of great concern to Noramco due to the information presented by Dishman about its own capitalization and essentially minimalistic current operations.

As the District Court may have surmised during this matter, and as detailed below through admissions of the Defendant, Dishman USA Inc. is a wholly controlled, and undercapitalized subsidiary of the India entity Dishman Carbogen Amcis Limited ("Dishman Carbogen") as part of an international network of "Carbogen" affiliated companies. Absent a continuation during remand of the hard-fought levy secured by Noramco to protect its potential judgment, Noramco—and Dishman—believe that Noramco will never be paid on any judgment, potential or otherwise. Noramco respectfully seeks this Court's assistance at this time to protect Noramco's equitable and beneficial interests in a potential judgment as contemplated by the provisional remedies articulated in the applicable State and Federal law.

**2.      Summary of Remedy Sought on the Motion.**

The within motion is sought pursuant to F.R.C.P. Rule 64 to maintain the *status quo* of the execution levy now in place in the District of New Jersey. Rule 64 states that throughout any action before this District Court, *every remedy* is available for seizing property "to secure satisfaction of the potential judgment." Rule 64 provides this Court with on-point authority to continue the attachment levy obtained out of this District, at great cost by Noramco during the appeal, to secure satisfaction of the "potential judgment". The essence and purpose of Rule 64 is squarely applicable to Noramco's urgent need for judicial continuation of the lawful seizure of these moneys, consistent with 10 Del Code § 3508, Property subject to attachment, *among others*

*laws*, and we respectfully request that the levy in place by the US District Court in New Jersey remain undisturbed during the remaining pendency of this dispute between the parties.

**3.     Noramco's Legal Basis for Seeking Continuation of the Levy to Secure the Satisfaction of Noramco's Potential Judgment.**

Our Federal Rules of Civil Procedure provide the lawful remedy necessary to protect this plaintiff from undue risk of loss of maintaining the security of its "potential judgment." F.R.C.P. Rule 64 applies to ensure the protection of a party when collectability of a lawful judgment may be thwarted and the Court's involvement is necessary so that the rights of all the parties can be adequately protected while the litigation on the main claim proceeds:

> Rule 64. Seizing a Person or Property
>
> (a) Remedies Under State Law—In General. At the commencement of and throughout an action, every remedy is available that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of the potential judgment. But a federal statute governs to the extent it applies.
>
> (b) Specific Kinds of Remedies. The remedies available under this rule include the following—however designated and *regardless of whether state procedure requires an independent action*: [remedies include specifically "attachment" and "sequestration" as well as "other corresponding or equivalent remedies"].

Fed. R. Civ. P. 64 (emphasis added).

It is without question that the law of the state where this District Court is located, *Delaware*, provides for the remedies of attachment, sequestration and levy of monies within the State's statutory laws:

> § 3502. Corporations subject to attachment and garnishment.
> (a) All corporations doing business in this State, except as specified in subsections (b) and (c) of this section, are subject to the operations of the ***attachment laws of this State***, as provided in the case of individuals. A corporation shall be liable to be summoned as garnishee.
>
> § 3507. Foreign attachment against foreign corporations.
> A writ of ***foreign attachment*** may be issued against any corporation, aggregate or sole, not created by or existing under the laws of this State upon proof satisfactory

to the court that the defendant is a corporation not created by, or existing under the laws of this State, and that the plaintiff has a good cause of action against the defendant in an amount *exceeding $50*.

§ 3508. Property subject to attachment.
Goods, chattels, rights, credits, *moneys*, effects, lands and tenements may be attached under this chapter.

§ 3501. Domestic attachment; when writ may be issued.
A writ of domestic attachment may be issued against an inhabitant of this State upon proof satisfactory to the court that the defendant cannot be found, or that the defendant is justly indebted to the plaintiff in a sum exceeding $50, and has absconded from the defendant's usual place of abode or is about to leave the State or has gone out of the State with intent to defraud his or her creditors or to elude process.

10 *Del. C.* § 3501 *et seq*. (emphasis added).

Identical to the Federal Civil Procedure Rule 64, Delaware's own state provision Rule 64 provides for exactly the same protections to which Noramco is entitled to ensure the "securing satisfaction of a judgment ultimately to be entered":

VIII. PROVISIONAL AND FINAL REMEDIES AND SPECIAL PROCEEDINGS.

Rule 64. Seizure of persons or property.

(a) Generally. -- At the commencement of and during the course of an action, all remedies providing for seizure of person or property for the purpose of compelling ***appearance or securing satisfaction of a judgment ultimately to be entered*** in the action are available under the circumstances and in the manner provided by the statute.

Del. Super. Ct. Civ. R. 64(a) (emphasis added); *see also* Del. Ch. Ct. R. 64 (same). [4]

Provisional remedies have long been recognized, even by our Highest Court, as necessary for the equitable protection of litigants when circumstances warrant the Court's discretionary involvement to protect the substance and effect of that Court's ultimate ruling so that it is not – in

---

[4] New Jersey similarly affords all such provisional remedies to the District Court by statute and Rule of Court. Citations may be provided if necessary.

reality – illusory at the end of the day. See generally, *Swift & Co. Packers v. Compania Colombiana Del Caribe, S.A.*, 339 U.S. 684, 689, 70 S.Ct. 861, 94 L.Ed. 1206 (1950) ("where an attachment is upheld pending determination of the principal claim ... the rights of all the parties can be adequately protected while the litigation on the main claim proceeds.")

4.   **Noramco requests the Court provisionally continue the Bank Levy based upon Dishman's Undercapitalized Position and Unnecessary Risk of any Potential Judgment being Uncollectible.**

Based on post-judgment discovery produced by Dishman and the statements made by Dishman therein, Defendant has admitted that it is nothing more than a "pass through" entity for Dishman Carbogen. *See* Ex. D.

This admission appeared to have been pre-ordained during a November 2023 meet and confer when Dishman essentially advised that the judgment was uncollectable. Bayne Aff. at ¶ 12. At that time, Defendant admitted that its attempts to obtain an appeal bond was unsuccessful because Dishman has insufficient assets and the bond company refused to transact with Dishman Carbogen in India. Later, at a Jan. 5, 2024 meet and confer, Dishman further admitted that it maintains a policy that only two to three percents (2-3%) of revenue beyond basic operating expenses are maintained in the US bank account in case of an emergency, and if no such emergency persists, the remainder is paid in dividends to Dishman Carbogen. Dishman has also admitted that it routinely has only about three to five thousand dollars in hard assets and that it is not in control of its inventory. Defendant's practice of shifting essentially all of its assets to Dishman Carbogen in India makes it impossible for Noramco to collect on its Judgment if the current bank levy is lifted. *See* Bayne Aff. at ¶ 13.

To the extent that admitting that even a US surety refused to "bond" Dishman's approach to an ordinary stay of execution, Dishman has made several other, more specific, admissions which

warrant both this District Court's and Noramco's reasonable concern that Noramco will be unable to collect on a judgment. Dishman has made the following admissions:

- "Dishman's *sole function* is to serve as the United States *distribution mechanism* for DCAL's [Dishman Carbogen] products.

- Dishman "has *no physical assets or equipment of value*" in the United States.

- "As the audited financial statements show, *all revenues received by Dishman are transferred to DCAL* [Dishman Carbogen] after Dishman has withheld a small amount for its actual operating expenses."

- "Those documents provide a complete picture of Dishman's financial condition. Dishman *does not own* any real property."

- "Dishman is *not a creditor*."

- "Dishman *does not maintain any insurance* that would provide coverage for Noramco's claims."

- "Dishman *does not own any stock* or brokerage accounts."

- "Dishman has *no subsidiaries* and has no ownership interest in any other company."

*See* Ex. D to Bayne Aff. (Dishman's Jan. 19, 2024 written response to Noramco's Notice of Deficiencies).

Despite being a registered New Jersey corporation with employees located in New Jersey, Counsel for Defendant has stated on numerous occasions that his client is "in India" and that speaking to his client requires consideration of a 10.5 hour time difference. *See* Ex. E to Bayne Aff. (Sept. 21, 2022 email from S. Stamoulis). This Court may recall, and the record shows, that during the District Court action, Defendant maintained that depositions may need to occur in India.

At the Appellate level, the matter was assigned to mandatory meditation in the normal course. According to the standard Notification of Assignment to Telephonic Mediation, the party-representative required to be in attendance at the Mediation was to be a person who possessed "settlement authority" for the party. *See* Ex. F, 3/16/2023 Notice of Assignment of Telephone

Mediation, USCA 3rd Cir. Case No. 23-1396, Dkt. No. 11. Dishman represented to the Mediation staff of the Third Circuit Court of Appeals that Dishman personnel could not attend a scheduled Mediation because his client is located in India. *See* Ex. G to Bayne Aff. (Apr. 25, 2023 email from S. Yee to counsel for the parties) (stating "Mr. Stamoulis has requested that the mediation start earlier as his client is located in India.").

Dishman and Dishman Carbogen's actions post-judgment remove any doubt that the management and finances of Dishman are <u>dominated</u> by Dishman Carbogen. On or about April 1, 2024—after the US Marshals Service in the District of New Jersey levied upon Dishman's known bank account in that state—Dishman Carbogen deposited approximately $633,000 into Defendant's bank account. This deposit shows that Defendant has substantial assets located both outside of the Unites States and through commercial transactions that are wholly controlled by its parent Dishman Carbogen from India.[5] Presently, we are informed that Dishman continues to fund they levied account over and above the current levy amount regularly through various deposits inbound to Dishman USA. Dishman has admitted that Defendant receives otherwise out-of-reach assets to cover its operating expenses while the bank levy is in place.

---

[5] Following the service by the U.S. Marshals Service of the US District Court of NJ Writ of Execution, Dishman counsel has made repeated request to Noramco to direct Bank of America as to the scope and limit of execution of the US Court Writ and most recently to inform the Bank to remove the levy. Noramco through counsel has consistently engaged in good-faith dialogue with counsel and the Bank of America to ensure that the Bank properly executed the Writ. Counsel was provided with the Writ of Execution as issued by the US Marshals to execute against these moneys as satisfaction of the Judgment. After the Writ has been issued by the Court, the details pertaining to the levy is not Noramco's to direct. *Sylvan Equip. Rental Corp.*, 292 N.J. Super. at 573-74 ("Once the levy is made on a bank account . . . the funds levied are technically no longer the bank's or debtor's to control.") The limited funds to satisfy the judgment were and have been frozen at the Bank of America pursuant to the US Marshals service of the Writ of Execution. Our information remains that any and all "instructions" to the Bank much come through the service of Court notice through the US Marshals Service. Such notice is traditionally obtained on motion or consent decree processed through the US Court under which the Writ was issued, which is then served on the Bank by a US Marshals.

Releasing the frozen bank account funds would leave Noramco with an inadequate remedy at law, as it is foreseeable that it would be impossible to reattach the funds or collect from the Defendant in the future. Adherence to the fiction of a separate corporate existence between Dishman Carbogen and Defendant would perpetrate a fraud or injustice on this Court and Noramco and would also otherwise circumvent the applicable law which recognizes Noramco's right to collect on any potential judgment and to Noramco's current equitable remedy to retain lawfully seized moneys to secure satisfaction of a potential judgment. That Dishman USA Inc. has no other assets in the US, and that Dishman Carbogen controls Defendant's management, finances, and affairs is a crystal-clear admission that Dishman USA Inc. is <u>wholly controlled</u>, <u>dominated</u> and <u>subordinate</u> to Dishman Carbogen

Noramco believes that if the current bank levy is released, Defendant Dishman or its India parent company, Dishman Carbogen, will continue to dissipate, transfer and otherwise keep attachable assets out of Noramco's reach, making it impossible for Noramco to collect on any potential judgment in the future. Without the continuation of the levy, Noramco views any ultimate judgment as uncollectible without extensive international judgment collection litigation, an irreparable risk of loss to Noramco.

In assessing the balance of the equities in connection with Noramco's request for this important continuation of the levy provisionally protecting Noramco's potential judgment, it is crucial to restate the baseline for our request. The major claims by Noramco on the pleadings before this District Court have been affirmed by the Third Circuit, confirming Defendant's liability and breach of contract. That crucial Decision by this Court is still largely in effect. The issues on remand as to notice and mitigation of damages are narrow in scope and do not negate Dishman's overall liability.

Absent the remedy sought, the risk that Dishman or Dishman Carbogen may secrete, dissipate or transfer assets, will make exceedingly difficult to collect the potential judgment in the future. The admissions and other or evidentiary indications of Dishman's financial instability or potential for asset shifting, support Noramco's equitable need to maintain the bank levy to secure the judgment. Maintaining the attachment of the funds is clearly necessary to "**secure**" the final judgment as this District Court is able under both Federal and Delaware Rule 64.

Absent this equitable remedy, it will most likely be impossible to reattach the funds or collect from the Defendant in the future given their inter-company synergies and approach to evading Noramco's efforts in the past. The admissions before this District Court show that Plaintiff faces significant risk of non-collection, while the Defendant's hardship is minimized by the fact that the funds already secured can be deposited to an interest-bearing account during the remand. Quite clearly, maintaining the bank levy in *status quo* does not impose undue hardship on the Defendant itself, who is not dependent on the funds for legitimate business operations.

Finally, Plaintiff, if successful, has the right to be made whole, compelling this District Court to maintain the bank levy until the entire case, including the remand and any appeals, is fully adjudicated.

## **CONCLUSION**

For the foregoing reasons we respectfully request that this Court refrain from disturbing the bank levy in place in order to maintain and secure the satisfaction of the potential judgment to Noramco.

[*Signature follows on next page*]

Dated: July 30, 2024                    Respectfully submitted,
       Wilmington, Delaware

**THE ROSNER LAW GROUP LLC**        **THE BAYNE LAW GROUP LLC**
*/s/ Zhao Liu*                                    */s/Jennifer M. Mohamed*
Frederick B. Rosner, Esq. (DE #3995)     Jennifer M. Mohamed, Esq.
Zhao Liu, Esq. (DE #6436               Andrew J. Bayne, Esq.
824 Market Street, Suite 810           116 Village Boulevard, Suite 235
Wilmington, DE 19801                  Princeton, New Jersey 08543-3036
Telephone: 302-777-1111              Phone: (609) 924-4295
rosner@teamrosner.com                jennifer@baynelaw.com
liu@teamrosner.com                     abayne@baynelaw.com

                                                *Attorneys for Plaintiff, Noramco LLC*