IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| NORAMCO LLC,<br><br>    *Plaintiff*,<br><br>v.<br><br>DISHMAN USA, INC.,<br><br>    *Defendant*. | Civil Action No. 21-1696-WCB |

**MEMORANDUM OPINION AND ORDER**

The plaintiff, Noramco LLC ("Noramco"), and the defendant, Dishman USA, Inc. ("Dishman"), have each filed motions for summary judgment in this contract dispute case, which is before the court on remand from the Third Circuit Court of Appeals. Dkt. Nos. 150, 153. Noramco filed an opening brief in support of its summary judgment motion, Dkt. No. 154, Dishman responded, Dkt. No. 175, and Noramco filed a reply, Dkt. No. 181. Dishman filed an opening brief in support of its summary judgment motion, Dkt. No. 151, Noramco responded, Dkt. No. 178, and Dishman filed a reply, Dkt. No. 182. For the reasons set forth below, both motions for summary judgment are DENIED.

**I.      BACKGROUND**

This case involves a contract ("the Supply Agreement") under which Dishman agreed to provide Noramco with a large amount of olivetol, an ingredient used in the manufacture of pharmaceutical products. *Noramco LLC v. Dishman USA, Inc.*, No. 23-1396, 2024 WL 3423711 *1 (3d Cir. July 16, 2024). The Supply Agreement required Dishman to supply Noramco with olivetol manufactured at Dishman's manufacturing facilities in India. The Supply Agreement also represented that those facilities were "c-GMP compliant," i.e., compliant with the current Good

Manufacturing Practice standards set by the U.S. Food and Drug Administration (FDA). *Id.*; Dkt. No. 69-2 §§ 1.4, 1.7, 2.1, 4.1, 10.2.1. The Supply Agreement further provided that if Noramco elected to reject the olivetol delivered Dishman, it had to provide written notice of the rejection by the latter of 30 business days after Noramco received the olivetol or, if the defect in the olivetol was latent, within 15 business days after Noramco discovered or should have discovered that the olivetol failed to conform to the specifications or otherwise failed to conform to the warranties given by Dishman in the Supply Agreement. Dkt. No. 69-2 at § 4.3.1.

In February 2020, the European Directorate for the Quality of Medicines & HealthCare (EQDM) inspected Dishman's facility in India. On March 19, 2020, following the inspection, the EQDM informed Dishman that the facility was not compliant with the cGMP standards. *Noramco*, 2024 WL 3423711, at *1.

On March 26, 2020, Dishman shipped batches of olivetol to Noramco that Dishman manufactured after the failed inspection. Noramco received the shipment of 21 barrels of olivetol on April 2, 2020. On April 17, 2020, Noramco learned that Dishman's manufacturing plant had failed the EQDM inspection, and on April 18, 2020, Noramco sent an email to Dishman asking for an explanation of why the olivetol delivered to Noramco was referred to as noncompliant with cGMP. *Noramco LLC v. Dishman USA, Inc.*, No. 21-1696, 2023 WL 1765566, at *1 (D. Del. Feb. 3, 2023); *Noramco*, 2024 WL 3423711, at *1. After a sequence of discussions between the parties, Noramco opened 6 of the 21 barrels of olivetol, tested the product, and resealed the opened barrels. *Noramco*, 2024 WL 3423711, at *2; Dkt. No. 154 at 3, 15; *see* Dkt. No. 175 at 20. On August 19, 2020, Noramco formally rejected the olivetol and sought a refund of the amount Noramco had paid for the product. When Dishman ultimately refused to refund the money, Noramco filed this action. *Noramco*, 2024 WL 3423711, at *2.

I granted summary judgment in favor of Noramco on the issues of Dishman's breach of the Supply Agreement and Noramco's entitlement to damages for the breach. *Noramco*, 2023 WL 1765566, at *1, *8. Thereafter, I denied Dishman's Rule 59(e) motion for relief from the judgment, which was based on Dishman's contention that Noramco's rejection of the olivetol was untimely and that the olivetol's noncompliance with the cGMP standards was not a latent defect. *Noramco LLC v. Dishman USA, Inc.*, No. 21-1696, 2023 WL 2186394 *2–4 (D. Del. Feb. 23, 2023).

On Dishman's appeal, the Third Circuit affirmed in part, but vacated the court's summary judgment order in part and remanded the case for further proceedings. The Third Circuit addressed three issues on appeal. First, the Third Circuit agreed with this court that "there is no genuine dispute of material fact that Dishman breached the Supply Agreement by delivering defective olivetol." *Noramco*, 2024 WL 3423711, at *4. However, the court found there were disputes of material fact as to (1) "whether Noramco timely rejected the olivetol under § 4.3.1 of the Supply Agreement" and (2) "whether Noramco failed to mitigate damages." *Id.*

On the timely rejection issue, the Third Circuit found that there were genuine disputes of material fact as to "whether Noramco rejected the olivetol on April 18" and "whether Noramco's August 19 letter provided timely notice of rejection." *Noramco*, 2024 WL 3423711, at *5. First, the court ruled that based on the behavior of the parties and the lack of an unequivocal rejection by Noramco in its April 18 correspondence with Dishman, a finder of fact could find that Noramco was still deciding in April whether to reject the olivetol and did not actually reject it until August 19, which was outside the 30-business-day window specified in the Supply Agreement for rejection of the product. *Id.* at *4–5. Alternatively, the court ruled that the letter sent by Noramco on August 19 could have served as a timely rejection if there was a latent defect in the olivetol that

3

led Noramco to reject the olivetol within 15 business days after the defect was discovered or should have been discovered. *Id.* at *5. In either case, the court held that there was a genuine dispute of material fact on the issue of timely rejection that made summary judgment improper. *Id.*

On the mitigation of damages issue, the Third Circuit noted that a reasonable inference could be drawn that the olivetol had some residual value and that "Noramco destroyed or diminished the olivetol's residual value by opening the drums." *Noramco*, 2024 WL 3423711, at *6. Thus, the court concluded that there was a genuine dispute as to "whether Noramco's unilateral actions prevented Dishman from selling the olivetol to another lawful buyer," which made summary judgment improper. *Id.*

Although the Third Circuit found that the issues of timely rejection and mitigation of damages raised questions of material fact that could not be resolved on summary judgment, the question now before the court is whether, in light of discovery proceedings following the Third Circuit's decision, there remains a genuine dispute of material fact with regard to those two issues.

## II. DISCUSSION

### A. Legal Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In deciding whether to grant summary judgment, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." *U.S. v. Diebold*, 369 U.S. 654, 655 (1962); *see Marino v. Industrial Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004). Summary judgment should not be granted if "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

### B. Noramco's Motion for Summary Judgment

In its motion for summary judgment, Noramco argues that no genuine dispute of material fact remains after further discovery on remand. Dkt. No. 154 at 3. Noramco contends that its rejection of the olivetol was timely under the circumstances and that it took reasonable steps to mitigate Dishman's damages. *Id.* Dishman responds that Noramco did not reject the olivetol within the time required by the Supply Agreement and that Noramco's actions compromised the marketability of the olivetol to others who might have been interested in purchasing it. Dkt. No. 175 at 2. These disputes mirror the genuine disputes of material fact on the same two issues that led the Third Circuit to remand this case for further proceedings in this court. *See Noramco*, 2024 WL 3423711, at *5. After reviewing the arguments made by both parties, I find for the reasons set forth below that there is still a genuine dispute of fact with regard to those two issues, and that a finder of fact could reasonably resolve those issues in favor of either party. Accordingly, I deny Noramco's motion for summary judgment.

#### 1. Timely rejection

Noramco first argues that facts developed in discovery establish that summary judgment should be granted in its favor as to the timeliness of Noramco's rejection of the olivetol. At the outset, the parties address whether the defect in the olivetol was a latent defect within the meaning of the Supply Agreement, which defined such a defect as "not detected by the analytical test methods in operation at the date of shipment to NORAMCO by DISHMAN and which was not detected by NORAMCO during the inspection period defined by Section 4.3.1." Dkt. No. 69-2 § 1.10. Dishman was clearly aware of the defect prior to the time the olivetol was delivered to Noramco, and Noramco became aware as of April 17, 2020, that the olivetol might be defective. There remains a dispute, however, whether Noramco knew or should have known at

5

that time both that the olivetol was not cGMP compliant and that the defect could not be cured so as to allow the olivetol to be used for pharmaceutical purposes.

In my initial summary judgment order, I ruled that the evidence was clear that Noramco did not know at the time of delivery that the olivetol was unusable, and that the August 19 letter therefore provided timely notice of rejection. The Third Circuit disagreed, however, finding that there was "a genuine dispute of material fact about whether Noramco's August 19 letter provided timely notice of rejection." For that reason, the Third Circuit was unable to sustain this court's ruling on summary judgment that "the defect with the olivetol remained latent until Noramco conclusively determined that Dishman did not comply with cGMP." *Noramco*, 2024 WL 3423711, at *5 & n.11.[1]

In its motion, Noramco argues that the correspondence between Noramco and Dishman satisfied the written notice requirement in the Supply Agreement and thus constituted a timely rejection. Dkt. No. 154 at 7–8. Specifically, Noramco argues that it could not have known of the defect in the olivetol at the time of the delivery; that the correspondence between the parties was sufficient notification under the Supply Agreement; and that a legal opinion from Noramco's general counsel as to the effect of the non-compliance with the FDA's cGMP standards was needed before Noramco could issue a formal rejection of the shipment. *Id.* at 5–11. Alternatively, Noramco contends that Dishman's actions either justify any delay in Noramco's timely rejection

---

[1] There is some confusion in the parties' briefing as to the meaning of the term "latent." At one point, Noramco argues that the defect in the olivetol was not latent because Dishman was aware of the non-cGMP compliant status of the olivetol at the time it was delivered. The latency issue, however, turns not on Dishman's knowledge, but on Noramco's. The defect in the olivetol was "latent" until such time as Noramco knew or should have known not only that the olivetol was non-cGMP compliant but also that the non-cGMP-compliant status of the olivetol rendered it unusable for pharmaceutical purposes.

6

or bar strict enforcement of the timely rejection requirement of the contract because any such delay was induced by Dishman's conduct. *Id.* at 8, 11–13.

Dishman responds that Noramco knew by April 17, 2020, that the olivetol was not cGMP compliant and failed to reject the shipment within 30 business days of delivery, as required by the Supply Agreement (or, if the defect was latent, within 15 business days after Noramco knew or should have known of the defect). Dkt. No. 175 at 1–2. According to Dishman, Noramco did not reject the olivetol until Noramco's August 19, 2020, letter, which came several months after the delivery of the product. *Id.* at 8. Dishman contends that even if the defect was latent, Noramco had knowledge of the defect by April 28, 2020. *Id.* at 2, 5–6. Dishman also argues that Noramco's payment for the shipment on June 19, 2020, with knowledge of the defect, operated as a waiver of any objection to the non-conforming character of the goods. *Id.* at 12–13. Finally, Dishman argues that it did not act in bad faith, because it did not conceal information from Noramco and never represented to Noramco that the olivetol at issue could be made cGMP compliant. *Id.* at 16–17.

Although the Third Circuit agreed with this court's ruling that Dishman breached the Supply Agreement, the court concluded that there were genuine disputes of material fact on the timely rejection issue and the mitigation issue. *Noramco*, 2024 WL 3423711, at *5–6. Further developments in this case do not justify a different conclusion. Although the Third Circuit noted that there is a difference between a "rejection" and an expression of concern, the difference highlighted by the court served only to demonstrate that there was a genuine dispute of material fact as to the effect of the April 18 communication. *Id.* at *5. That issue remains in dispute. As the Third Circuit characterized the situation, Dishman initially "hedged" and "equivocated," and the parties "continued to correspond about the olivetol between April and August 2020." *Id.* at *1–2. Whether Noramco's April 18 communication, or some other correspondence within the

window for timely rejection, constituted a rejection of the olivetol remains a disputed factual question. *See Id.* at *5.

A reasonable finder of fact could find that Noramco's communication with Dishman on April 18, 2020, or Noramco's other actions following that communication satisfied the Supply Agreement's requirement to reject the olivetol "by giving written notice" within 30 business days or to inform Dishman in writing of any latent defect within 15 business days after learning of the defect. Dkt. No. 69-2 § 4.3.1; *see Noramco*, 2024 WL 3423711, at *4–5. Even if that were not the case, it would be reasonable for a finder of fact to determine that Dishman's conduct in seeking to assure Noramco that the problem with the olivetol did not render the olivetol unusable for pharmaceutical purposes excused strict compliance with the contract's terms and that Noramco's rejection of the olivetol was therefore timely. On the other hand, a reasonable finder of fact could find that Noramco's correspondence on April 18 and throughout the contractually designated period for rejection was insufficient to constitute timely rejection of the defective olivetol. The disputed material fact on the issue of timely rejection identified by the Third Circuit thus remains a disputed material fact, and Noramco's motion for summary judgment on that issue will therefore be denied.

2. **Mitigation of Damages**

The Third Circuit also held that there is a genuine dispute of material fact as to whether Noramco failed to mitigate Dishman's damages. *Noramco*, 2024 WL 3423711 at *6. Like the timely rejection issue, the mitigation of damages issue continues to turn on genuine disputes of material fact.

According to Noramco, the steps it took after it discovered the defective character of the olivetol were reasonable and in accordance with industry standards, as required by Delaware law.

8

Dkt. No. 154 at 14.  Noramco argues that the decision to test a representative sample of the olivetol was part of "two parallel mitigation efforts" taken in collaboration with Dishman.  Noramco contends that Dishman could have mitigated its damages by accepting the return of the barrels and selling the product to another party.  *Id.* at 14–16.  Noramco also contends that opening 6 of the 21 barrels of olivetol and testing them resulted in no diminution in the value of the olivetol, and that Noramco's obligation under the Food, Drug, and Cosmetic Act to protect the public from being exposed to a non-GMP pharmaceutical product required Noramco to test the olivetol.  *Id.* at 17–18.

In response, Dishman argues that the olivetol, even though not cGMP compliant, was not valueless for the purpose for which it was intended when it was delivered to Noramco, but that Noramco's decision to test a representative sample of the olivetol was a unilateral decision by Noramco that "rendered the olivetol unusable by any other customer." Dkt. No. 175 at 18–19.  In addition, Dishman asserts that there were customers willing to buy non-GMP compliant olivetol, especially because of a shortage during COVID, and that Noramco's delayed rejection of the material reduced the shelf life of the product by four months, rendering the olivetol less valuable.  *Id.* at 18, 20.

The question whether Noramco took appropriate steps to mitigate Dishman's damages remains in dispute.  The decision to open and sample the barrels, which Noramco argues was done as part of a collaborative effort with Dishman and which Dishman asserts was a unilateral decision by Noramco, was specifically noted by the Third Circuit as an issue to be explored on remand.  *Noramco*, 2024 WL 3423711 at *6.  According to the Third Circuit, "[t]he record supports a reasonable inference that Noramco destroyed or diminished the olivetol's residual value by opening the drums."  *Id.*  Nothing in the post-remand proceedings resolved that issue in Noramco's

9

favor. Noramco's motion for summary judgment on the mitigation of damages issue is therefore denied.

### C. Dishman's Motion for Summary Judgment

Dishman also moves for summary judgment, arguing that there is no genuine dispute of material fact on the issue of damages, because Noramco failed to reject the olivetol on a timely basis. Dkt. No. 151 at 1. According to Dishman, Noramco knew the olivetol was not cGMP compliant as of April 17, 2020, and failed to timely reject the delivery according to the terms of the Supply Agreement. *Id.* at 8–12. Any additional evidence concerning the delay in Noramco's rejection of the defective olivetol, according to Dishman, would be barred by the parole evidence rule. *Id.* at 12–15.

Dishman also argues that Noramco waived any claims associated with the defective olivetol when Noramco remitted payment on June 19, 2020, after knowing of the defect in the product. *Id.* 15–18. Both of Dishman's arguments are directed to the timely rejection issue, which the Third Circuit found to present a genuine dispute of material fact. *See Noramco*, 2024 WL 3423711 at *5–6.

In response, Noramco argues that the rejection of the olivetol at issue was timely under the circumstances and that its payment for the olivetol did not operate as a waiver because it was "made in good faith during ongoing negotiations." Dkt. No. 178 at 7, 12. Noramco says its written notice on April 18, 2020, was sufficient to constitute timely rejection. *Id.* at 2. Even if that notice was insufficient, Noramco argues, its formal rejection of the olivetol on August 19, 2020, occurred shortly after its legal department determined that the problem with the olivetol was uncurable and thus constituted an actionable breach of the Supply Agreement by Dishman. *Id.* at 2, 5. According to Noramco, its actions taken after the initial notification to Dishman on April 18, 2020, were made

in good faith, at Dishman's urging, and in "a collaborative effort to listen to Dishman's arguments that the olivetol was usable despite the defect." *Id.* at 4. As for the decision to remit payment for the olivetol, Noramco argues that it reasonably relied on Dishman's assurances that Dishman could cure the problems with the non-conforming olivetol. According to Noramco, a waiver of its rights under the Supply Agreement would require its "knowing and unconditional acceptance of the non-conforming goods," which did not occur in June 2020. *Id.* at 13–15. Noramco further contends that the parole evidence rule does not prevent consideration of evidence of the parties' course of performance or their communications to assist in the assessment of the parties' interpretation of the contract terms or the parties' intent. *Id.* at 16.

As in the case of Noramco's motion, there remains a dispute of material fact with respect to the timeliness of Noramco's rejection of the olivetol. In particular, there is a genuine dispute as to whether Noramco's April 18, 2020, correspondence was a rejection according to the terms of the Supply Agreement. *See Noramco*, 2024 WL 3423711 at *5. Drawing all inferences in favor of Noramco, the non-moving party for this motion, a reasonable finder of fact could find that Noramco provided the required notice of rejection on April 18, 2020, or alternatively the notice given on August 19, 2020, was still timely under the circumstances. Similarly, whether the June 19, 2020, payment constituted acceptance of the olivetol and a waiver of Noramco's right to reject non-conforming goods turns on the factual circumstances surrounding the payment.[2] If, as

---

[2] Dishman relies on a Delaware state case, *Bye v. George W. McCaulley & Son Co.*, 76 A. 621, 623 (Del. Super. Ct. 1908), and two cases from other jurisdictions for the proposition that unconditional acceptance and payment after full knowledge of a defect, without protest or reservation constitutes waiver of any objection to the asserted imperfect tender of goods. Dkt. No. 151 at 16. Those cases do not settle the matter here, because in this case there are factual disputes as to whether Noramco's payment was made with full knowledge that the problem with the olivetol was incurable and, relatedly, whether the parties were still engaged in discussions about whether Noramco should accept the olivetol based on Dishman's representations that the product could lawfully be used for pharmaceutical purposes.

Noramco contends, Dishman acted in a manner that led Noramco to believe the parties were still negotiating over whether the olivetol should be returned with a full refund during the period leading up to Noramco's formal rejection of the product, there remains a question as to whether Noramco's reliance on Dishman's conduct in that regard was reasonable and excused any failure to reject the olivetol within the period specified in the Supply Agreement.

These questions as to the timely rejection issue continue to raise genuine disputes of material fact. As such, it would be improper for me to grant summary judgment on the timeliness issue at this stage of the litigation. Accordingly, Dishman's motion for summary judgment is denied.

### III. CONCLUSION

For the reasons stated above, the motion for summary judgment by the plaintiff and the motion for summary judgment by the defendant are both denied. The issue of breach of the Supply Agreement by Dishman is settled, and the jury will be so instructed. However, genuine disputes of material fact remain as to the issues of the timeliness of Noramco's rejection and the mitigation of damages. Those issues are to be resolved by the finder of fact at trial.

IT IS SO ORDERED.

SIGNED this 6th day of October, 2025.

_____
WILLIAM C. BRYSON
UNITED STATES CIRCUIT JUDGE